IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LILY ENGLEMAN,

Plaintiff,

v.

NATHAN ADKERSON, MARYJANE
MOSS, JOSE MORALES, and JOHN
and JANE DOE DEFENDANTS,

Defendants.

Civil Action
File No. _____

## <u>COMPLAINT</u>

For Lily Engleman, social work is a calling.  After Lily earned her master's
degree in social work at Georgia State University, Georgia's Office of the Capital
Defender hired her as a mitigation specialist where she worked with criminal
defendants in death penalty cases.  On November 6, 2019, Lily visited her client
Ricky Dubose at the Georgia Department of Corrections' maximum-security area
the "Special Management Unit."  When Lily was leaving the Special Management
Unit, she was met by Defendants Nathan Adkerson and Maryjane Moss who
arrested Lily for smuggling contraband to Mr. Dubose.  Lily had no idea why
anybody could think she had smuggled anything to Mr. Dubose – she had not.  Lily

would learn a year later that Defendant Adkerson had sworn out a false affidavit to secure her arrest.

Regardless of her innocence, Defendant Adkerson took Lily to the local jail where she was met by a camera crew.  Somebody had tipped a news outlet in Atlanta that Lily was being arrested, so a reporter stuck a camera in Lily's face as she was being booked, continued recording Lily for hours while she sat silently in a holding cell, then ran the booking on the news.  Still, Lily had no idea why she was being put through this nightmare.

Unbeknownst to Lily or to Mr. Dubose's lawyers, Defendant Adkerson – a Department of Corrections investigator – had targeted Mr. Dubose's defense team. Adkerson was surreptitiously recording privileged meetings between Mr. Dubose and the lawyers and investigators on the Dubose defense team, including privileged meetings between Mr. Dubose and Lily.  Needless to say, this was a gross constitutional violation, and it also violated a court order in Mr. Dubose's case.

When Adkerson's investigation did not reveal any criminal activity, Adkerson drew up false charges against Lily.  Adkerson swore out an affidavit claiming that the video recording from a September 6, 2019 visit showed Lily passing Mr. Dubose two items of contraband.  Adkerson then used the fraudulently

obtained warrant to arrest Lily.  Adkerson could never identify the supposed items of contraband, and no contraband was found on Dubose when he was strip searched after that September 6 meeting, but he sought the warrant regardless.  In the following year and a half, Lily was fired over the charges, her social work license was not renewed, and she could not be hired in her line of work because of these charges that haunted her life.   Lily went back to waiting tables at the restaurant she had left years before; she could no longer practice social work, the calling she had worked for years to realize.

The problem with Adkerson's affidavit, however, is that it was a lie.  After the criminal charges tormented Lily's life for more than a year, Adkerson finally had to turn over the "incriminating" video.  The video is well-lit and clear as day; Lily did not pass anything to Mr. Dubose.  Once the video came to light, the Butts County prosecutor dismissed the case against Lily on May 6, 2021 – a year and a half after her arrest.

Lily sues Nathan Adkerson for illegally recording her meetings with her client, swearing out a false affidavit, illegally arresting her, and maliciously prosecuting her.  Maryjane Moss was involved in the investigation and took part in the illegal recording, in Lily's illegal arrest, and her wrongful prosecution.  Jose Morales is the warden of the Special Management Unit and was responsible for the

3

illegal recording.  John and Jane Doe Defendants are included as any other officers who were involved in the illegal recording or Lily's arrest and prosecution.

### Parties, Jurisdiction, and Venue

1. Plaintiff Lily Engleman is a natural person and citizen of the United States of America, residing in Georgia, and is of full age.

2. Defendant Nathan Adkerson is an individual who was, at all times relevant to the allegations in this complaint, an employee of the Georgia Department of Corrections, acting under color of law.  On information and belief, Defendant Nathan Adkerson resides in Lamar County, Georgia.

3. Defendant Maryjane Moss is an individual who was, at all times relevant to the allegations in this complaint, an employee of the Georgia Department of Corrections, acting under color of law.  On information and belief, Defendant Maryjane Moss resides in Henry County, Georgia.

4. Defendant Jose Morales is an individual who was, at all times relevant to the allegations in this complaint, an employee of the Georgia Department of Corrections, acting under color of law.

5. This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

6. All the parties herein are subject to the personal jurisdiction of this Court.

7.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and L.R.

3.1(B)(1)(b), NDGa because a Defendant resides in Henry County, Georgia,

which is situated within the district and divisional boundaries of the Atlanta

Division of the Northern District of Georgia.

## Facts

### *Lily Engleman – Licensed Social Worker and Capital Mitigation Specialist*

8.  Lily Engleman is a professional social worker.  Lily earned her master's

degree in social work at Georgia State University in 2017 and she was

licensed as a Licensed Master Social Worker.

9.  After Lily earned her master's degree, she was hired in 2017 by Georgia's

Office of the Capital Defender as a mitigation specialist in capital cases.

10. Mitigation is a sacrosanct and constitutionally required role in death penalty

defense.  Mitigation specialists are counselors who speak for the dignity and

value of those who are accused of capital offenses.

11. Mitigation specialists have the clinical skills to elicit sensitive,

embarrassing, and often humiliating evidence that the defendant may never

have disclosed to understand how these conditions may have affected the

defendant's development and behavior.

12. Mitigation specialists do years of investigation into a capital defendant's background so that they can help juries understand the life of a capital defendant when the jury must decide whether the defendant will live or die.

13. The U.S. Supreme Court has time and again stressed the crucial role played by mitigation investigation in capital cases – competent, professional mitigation investigation is constitutionally required so that death sentences are not handed out arbitrarily:

   a. "Because of th[e] basic difference between the death penalty and all other punishments, this Court has consistently recognized that there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."  Barefoot v. Estelle, 463 U.S. 880, 913–914, 103 S.Ct. 3383 (1983) (dissenting opinion).

   b. In the sentencing phase of a capital case, "[w]hat is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." Jurek v. Texas, 428 U.S. 262, 276, 96 S.Ct. 2950 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.).

c. For that reason, the Supreme Court has repeatedly insisted that "the sentencer in capital cases must be permitted to consider any relevant mitigating factor" and that "a sentencing judge's failure to consider relevant aspects of a defendant's character and background creates []an unacceptable risk that the death penalty was unconstitutionally imposed…" Eddings v. Oklahoma, 455 U.S. 104, 112, 117, 102 S.Ct. 869 (1982) (O'CONNOR, J., concurring).

14. As a mitigation investigator with the Georgia Office of the Capital Defender, Lily was assigned, among other cases, to the defense of Ricky Dubose.

15. Mr. Dubose is accused in a high-profile criminal case. Mr. Dubose and a codefendant are accused of killing two Department of Corrections officers while escaping from custody in 2017, a case that garnered national attention.

### Adkerson's Illegal Targeting of the Dubose Defense Team

16. In September of 2019, Defendant Nathan Adkerson – a Department of Corrections investigator – began targeting Mr. Dubose's defense team.

17. Adkerson began surreptitiously recording privileged meetings between Mr. Dubose and his lawyers and/or the investigators on Mr. Dubose's defense team.

18. Adkerson surreptitiously recorded privileged meetings between Mr. Dubose and his lawyer.

19. Adkerson surreptitiously recorded privileged meetings between Mr. Dubose and his mitigation specialist, Lily Engleman.

20. Adkerson did not inform the lawyers and investigators on Mr. Dubose's legal defense team that he was surreptitiously recording them.

21. Adkerson did not seek or obtain a warrant in order to surreptitiously record privileged meetings between Mr. Dubose and his defense team.

22. Department of Corrections Officials had previously prevented Mr. Dubose's legal defense team from having meaningful contact with Mr. Dubose when an attorney was not present (e.g. an investigator trying to meet with Mr. Dubose without the attorney joining), so they sought and were granted an Order from the judge overseeing Mr. Dubose's criminal case. That Order required that Georgia Department of Corrections Officials allow any member of Mr. Dubose's legal defense team to have confidential contact with Mr. Dubose.

23. The Court's Order allowing contact visits between Mr. Dubose and non-attorney members of Mr. Dubose's legal defense team was entered on June 21, 2018 and states in relevant part (emphasis supplied):

> It is hereby ordered that Mr. Ricky Allen Dubose, GDC No.
> 1000492869, shall be permitted contact visits with all members
> of the defense team regardless of whether an attorney is present.
> **Said visits shall be conducted in a confidential setting**.

24. Defendant Adkerson and the Georgia Department of Corrections had a copy of this order.

25. Adkerson did not inform the lawyers and investigators on Mr. Dubose's legal defense team, nor did he inform the judge who had issued the Order, that he was planning to violate this Order and surreptitiously record Mr. Dubose's meetings with his legal defense team, despite the clear language in the order that **"Said visits shall be conducted in a confidential setting."**

26. Defendant Jose Morales became the warden at the Special Management Unit in July of 2019.

27. Defendant Morales was involved in the recording of the confidential and privileged meetings between Mr. Dubose and his defense team (including Lily) as is discussed herein.

28. Neither Adkerson nor any other Department of Corrections officials such as Warden Moralas notified Lily Engleman or the other members of the Dubose defense team that they were being surreptitiously recorded when they met with Mr. Dubose.

29. There were no signs or other indications in the meeting rooms where Mr. Dubose met with his legal defense team that their meetings were being recorded.

30. Lily and the other members of the Dubose defense team had a reasonable expectation of privacy when they were meeting with Mr. Dubose.

31. Lily and the other members of the Dubose defense team reasonably relied on the court order that their meetings with Mr. Dubose would be confidential, and trusted that Georgia Department of Corrections officials would not be recording their meetings with Mr. Dubose.

32. It is clearly established by binding 11th Circuit precedent[1] as well as Georgia statute[2] that it is illegal to record a criminal defendant's meeting with his lawyer (or defense team[3]), even when done in an interrogation room.

---

[1] See, e.g., Gennusa v. Canova, 748 F.3d 1103 (11th Cir. 2014) (holding that various members of county sheriff's office violated a detainee's Fourth Amendment rights by intercepting his privileged conversations with his attorney in an interview room).

[2] See O.C.G.A. § 16-11-62(2)(A)("it it shall not be unlawful [] To use any device to observe, photograph, or record the activities of persons incarcerated in any jail, correctional institution, or other facility in which persons who are charged with or who have been convicted of the commission of a crime are incarcerated, **provided that such equipment shall not be used while the prisoner is discussing his or her case with his or her attorney**.")(emphasis supplied).

[3] See, e.g., Spence v. Hamm, 226 Ga.App. 357, 487 S.E.2d 9 (1997) (holding that attorney-client privilege applies equally to member of attorney's office).

33. It is also clear under Georgia law that communications between a licensed social worker like Lily Engleman and her patient are privileged and confidential.[4]

34. In short, the surreptitious recording of Mr. Dubose's privileged meetings with his legal defense team violated the U.S. Constitution, several Georgia laws, and an unambiguous court order.

### *Adkerson's Failed Investigation and False Claims Against Lily*

35. Adkerson's investigation was fruitless – Mr. Dubose's defense team was not doing anything illegal.  Instead of closing his investigation, however, Adkerson drew up false charges against Lily.

36. On November 4, 2019, Adkerson swore out an affidavit claiming that the video recording from a September 6, 2019 visit between Lily and Mr. Dubose showed Lily passing Mr. Dubose two items of contraband.  A true and correct copy of the warrant application is attached hereto (personal information is redacted).

37. This affidavit supplied the only grounds for Lily's arrest and public shaming.

---

[4] See O.C.G.A. § 24-5-501(a)(7)

38. Adkerson's false affidavit reads as follows:

---

**AFFIDAVIT**

Personally came Nathan Adkerson, who on oath says that, to the best of his/her knowledge and belief Lily   Eugenia Engleman did, commit the offense of, 42-5-18(a) Felony, Giving weapons, intoxicants, drugs, or other items to inmates without consent of warden on September 06, 2019 at 03:42 PM to September 06, 2019 at 03:49 PM, in Butts County. The place of occurrence of said offense being 2978 Hwy 36 W Jackson GA 30233; and against State of Georgia.

Said offense being described as:   42-5-18(a)   Felony, Giving weapons, intoxicants, drugs, or other items to inmates without consent of warden

For the said Lily   Eugenia Engleman did violate O.C.G.A. 42-5-18(a) when he/she unlawfully to wit said accused did on the date of September 06, 2019 at between 3:42 PM and 3:39 PM hours   she was observed passing Georgia Department of Corrections Inmate Ricky Dubose two small unknown items that Inmate Ricky Dubose was observed picking the items up from the floor and then hiding said items in his socks as to avoid detection by staff. Said accused did pass these items to inmate Ricky DuBose with out the permission or consent of the Warden at the Georgia Diagnostic & Classification Prison Special Management Unit, A Correctional facility located in Butts County Georgia

---

39. This sworn affidavit is false.

40. The video recording of Lily's September 6, 2019 meeting with Mr. Dubose is well-lit and clear as day.

41. The video recording of Lily's September 6, 2019 meeting with Mr. Dubose does not show Lily "passing Georgia Department of Corrections Inmate Ricky Dubose two small unknown items."

42. The video recording of Lily's September 6, 2019 meeting with Mr. Dubose does not show Mr. Dubose "picking the items up off the floor and hiding them in his socks."

43. In the affidavit, Adkerson did not identify the two items of contraband.  At no time in Lily's arrest or criminal prosecution did Adkerson identify the

two items of contraband.  To date, Adkerson has not identified the two items of contraband.

44. Adkerson has not identified the two items of contraband because Lily did not pass Mr. Dubose two items of contraband.

45. The video recording of Lily's September 6, 2019 meeting with Mr. Dubose shows a typical interview between a mitigation investigator and client.

46. Because the purpose of mitigation investigation is to gain as much information as possible about a client's history, mitigation investigators seek detailed personal histories from clients.  Mitigation investigators ask about the client's personal and psychological history – relationships, major life events, past emotional trauma – as well as the client's physical and medical history – scars, medical diagnoses, tattoos, past physical trauma – to get a complete history.

47. For this reason, a mitigation investigator is not always sitting quietly taking notes; a mitigation investigator needs to have contact visits with a client so that the client can roll up his sleeves, lift up his pant leg, or roll down his socks to show a scar or a tattoo, as part of the complete history.

48. The portion of the video recording referenced in the affidavit, 3:42 to 3:49, shows a typical interview between a mitigation investigator and client; it does not show Lily passing contraband to Mr. Dubose.

49. The video recording of Lily's September 6, 2019 meeting with Mr. Dubose will be filed herewith under seal so that the Court may independently review the video.

50. In addition, it is policy at the Special Management Unit that an inmate undergo a full strip search <u>before and after</u> a contact visit with the inmate's attorney or an investigator with the attorney's office.

51. In fact, Special Management Unit Warden Jose Morales testified at an *ex parte* hearing[5] on December 2, 2019 that when he took over as warden in July of 2019 he "made it a practice to make sure we were enforcing the [strip search] policy."

52. When Mr. Dubose was strip searched <u>before and after</u> the September 6, 2019 visit with Lily, he did not have contraband on his person.

53. Based only on this affidavit, a warrant was issued for Lily's arrest. A true and correct copy of the warrant is attached hereto.

---

[5] Adkerson's illegal recording of attorney-client meetings has been the subject of extensive sealed litigation in Mr. Dubose's criminal matter; a portion of the December 2 hearing has been unsealed.

### *Adkerson's Deceit is Successful –*
### *Lily is Arrested, Publicly Shamed, and Loses her Job*

54. On November 6, 2019, Defendant Adkerson and Defendant Maryjane Moss (Moss is also a Department of Corrections investigator), surreptitiously recorded another meeting between Lily and Mr. Dubose.

55. Again on November 6, Lily did not pass anything to Mr. Dubose.

56. After the meeting, Adkerson and Moss arrested Lily for the felony offense of "Giving weapons, intoxicants, drugs, or other items to inmates without consent of warden."

57. When they arrested Lily, Adkerson and Moss knew the September 6 video did not show Lily passing anything to Mr. Dubose and knew Adkerson's affidavit used to obtain the warrant was false.

58. Adkerson and Moss arrested Lily and had her transported to the Butts County Jail.

59. Before Lily arrived at the Butts County Jail, somebody in law enforcement tipped a reporter that Lily was being arrested and that she would be booked at the Butts County Jail.

60. When Lily arrived at the sally port at the Butts County Sheriff's Office she was met by a reporter.

61. Butts County Sheriff's Office does not allow the general public into the sally port, of course, and the Sheriff's Office certainly does not allow the general public into the sally port when transporting a person in custody.

62. Regardless, Butts County Sheriff's Office officials allowed the reporter into the sally port.  The officials did this to publicly shame Lily.

63. The Butts County Sheriff's Office gave the reporter unprecedented access to Lily's booking; the reporter recorded Lily's intake questions, her fingerprinting, and her first appearance.

64. The reporter even recorded Lily for hours as she sat in a holding cell.

65. Again, the Butts County Sheriff's Office does not allow the general public into the booking area while people in custody are being booked, and it does not allow the general public to sit and stare at detainees in the holding cells – that is not an area which is open to the public.

66. But Butts County Sheriff's Office officials allowed the reporter unprecedented access because Lily had been targeted for public ridicule.

67. The reporter ran the story with footage of Lily getting out of the patrol car, being booked, being fingerprinted, and going to first appearance.

68. Lily's arrest was covered by several other media outlets.

69. Even today, the first result in a Google image search brings up Lily's mug shot.

70. Lily's social work license was not renewed because of the felony charges.

71. Lily's employer terminated her employment because of the felony charges.

72. Lily was unable to find comparable employment because of the felony charges. Lily applied with several other entities that employ mitigation investigators but she was repeatedly turned down because she was facing felony charges and because her bond conditions prevented her from visiting state inmates.

73. Lily eventually returned to the restaurant where she had worked before graduate school. As of the date of filing this complaint, Lily is still waiting tables at that restaurant.

### *Adkerson's Deceit Finally Comes to Light*

74. Lily waited for over a year as these false charges haunted her, wondering how she could have been charged with a crime she did not commit.

75. Finally, in November of 2020, more than a year after her arrest, the state turned its case file over to Lily's attorney.

76. Lily was finally able to view the video which Adkerson claimed would show her committing a felony. Of course, it showed no such thing.

77. Lily's attorney took the video to the prosecutor, who acknowledged to Lily's attorney that the video did not show Lily passing contraband to Mr. Dubose.

78. Finally, after Lily suffered a year and a half of living under the shadow of fabricated felony charges, after being shamed on major news outlets, after her social work license was not renewed, and after losing her job – after this nightmarish sixteen-month ordeal, the Butts County prosecutor dismissed Lily's criminal case.

79. Lily's life has been forever damaged by this series of patently amoral, unconstitutional acts of Georgia Department of Corrections investigator Nathan Adkerson.  She is entitled to compensation for these grave offenses.

## COUNT I
**Against Defendants Adkerson and Moss Under 42 U.S.C. § 1983**
**False Statements in Affidavit, Arrest without Arguable Probable Cause, and Malicious Prosecution**

80. Defendant Nathan Adkerson, acting on behalf of the Georgia Department of Corrections, obtained an arrest warrant for Plaintiff Lily Engleman using a falsified and misleading affidavit.

81. A true and correct copy of the falsified and misleading affidavit and the arrest warrant are attached hereto.

82. Before an arrest warrant may be issued consistent with the provisions of the Fourth Amendment to the U.S. Constitution, a truthful factual showing used to support probable cause must be proved to the issuing court.

83. The U.S. Constitution prohibits a law enforcement officer from knowingly, intentionally, or with reckless disregard for the truth making materially false statements in support of an application for a warrant.

84. When applying for the arrest warrant attached hereto, Defendant Adkerson knowingly and with reckless disregard for the truth made materially false and misleading statements and omissions to the issuing judicial authority.

85. The false statements contained within the affidavit were material and necessary to the finding of probable cause by the issuing Court.

86. Specifically, Defendant Adkerson's representation in the affidavit that Lily was seen "passing … Ricky Dubose two small unknown items" was material and necessary to the finding of probable cause by the issuing Court.

87. The video recording of the September 6 visit between Lily and Mr. Dubose does not show Lily "passing … Ricky Dubose two small unknown items."

88. Defendant Adkerson's representation in the affidavit that Lily was seen "passing … Ricky Dubose two small unknown items" was false information stated with a reckless disregard for the truth.

89. Defendant Adkerson should have recognized the error in the warrant application, or at least harbored serious doubts as to the facts contained therein.

90. Had false and misleading information in Adkerson's affidavit not been used, Defendant Adkerson knew there would have been no probable cause, or even arguable probable cause, sufficient to procure an arrest warrant for Lily.

91. On information and belief, Maryjane Moss, an investigator with the Georgia Department of Corrections, also viewed the video recording of the September 6 meeting between Lily and Mr. Dubose.

92. Defendant Moss was in a position to stop Defendant Adkerson from obtaining the warrant to arrest Lily.

93. Defendant Moss was in a position to report that Defendant Adkerson had obtained Lily's arrest warrant under false pretenses.

94. Rather than stopping or reporting Defendant Adkerson for making false statements, Defendant Moss failed to intervene to stop the constitutional violations (the fraudulent, improper, and illegal obtaining of the warrant, the illegal arrest, and the subsequent illegal prosecution) and/or aided and

abetted Defendant Adkerson in committing the constitutional violations alleged in this Complaint.

95. Defendants Adkerson and Moss used the arrest warrant attached hereto – the arrest warrant which was obtained by false pretenses – and arrested Lily.

96. By providing false and misleading information to the issuing Court, Defendants Adkerson and Moss manipulated the inferences that a Magistrate might draw based on the presentation that was made.

97. Because the arrest warrant for Lily was improperly obtained, Defendants Adkerson and Moss had no legal right to arrest Lily.

98. Defendant Adkerson violated Lily's constitutional rights by securing an arrest warrant when an objectively reasonable law enforcement officer in Defendant Adkerson's position would have known that no arguable probable cause existed to arrest Lily for the felony offense of "Giving weapons, intoxicants, drugs, or other items to inmates without consent of warden."

99. Defendants Adkerson and Moss made the decision to prosecute Lily for this offense with the intention to harm Plaintiff.

100.      Defendants Adkerson and Moss made the decision to prosecute Lily for this offense out of malice.

101.     Accordingly, Defendants Adkerson and Moss are each individually

liable for the damages sustained by Lily for her arrest and prosecution,

including, without limitation, her public humiliation and the loss of her job

and the non-renewal of her professional license.

102.     John and Jane Doe Defendants are included as any other officers who

were aware of and/or involved in Lily's arrest and prosecution – who viewed

the video recording of the September 6 meeting between Lily and Mr.

Dubose, were in a position to stop Defendant Adkerson from obtaining the

warrant to arrest Lily or to report that Defendant Adkerson had obtained

Lily's arrest warrant under false pretenses, and who, rather than stopping or

reporting Defendant Adkerson for making false statements, failed to

intervene to stop the constitutional violations (the fraudulent, improper, and

illegal obtaining of the warrant, the illegal arrest, and the subsequent illegal

prosecution) and/or aided and abetted Defendant Adkerson in committing

the constitutional violations alleged in this Complaint.

## COUNT II
## Against Defendants Adkerson, Moss, and Morales Under 42 U.S.C. § 1983
## Illegal Search

103.     Defendants Adkerson, Moss, and Morales were directly involved in recording privileged and confidential meetings between Ricky Dubose and his defense team in 2019.

104.     Defendants Adkerson, Moss, and Morales were directly involved in recording the September 6, 2019 privileged and confidential meeting between Ricky Dubose and Plaintiff Lily Engleman.

105.     The recording of Lily's confidential and privileged meetings with Mr. Dubose was a violation of Lily's Fourth Amendment right to be free from unreasonable searches and seizures, as well as her First Amendment right to free speech and her Fourteenth Amendment right to due process.

106.     Accordingly, Defendants Adkerson, Moss, and Morales are each individually liable for the damages sustained by Lily for the illegal surveillance of her confidential and privileged meetings with Mr. Dubose and all the damages that flowed therefrom – her subsequent illegal arrest and prosecution, her public humiliation, and the loss of her job and non-renewal of her professional license.

107.    John and Jane Doe Defendants are included as any other officers who were aware of and/or involved in the illegal recording of confidential and privileged meetings between Lily and Mr. Dubose – who were aware that the Georgia Department of Corrections was recording privileged meetings between Mr. Dubose and his defense team, were in a position to stop this illegal surveillance or to report the illegal surveillance, and who, rather than stopping or reporting this illegal surveillance, failed to intervene to stop the illegal surveillance and/or aided and abetted Defendants Adkerson, Moss, and Morales in committing the constitutional violations alleged in this Complaint.

## **Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court issue the following relief:

1) That process issue in accordance with the law;

2) That the Court award Plaintiff compensatory and general damages in an amount to be determined by the jury against Defendants;

3) That the Court award Plaintiff punitive damages in an amount to be determined by the enlightened conscience of the jury against Defendants;

4) That the Court award costs of this action, including attorneys' fees, to Plaintiff, pursuant to U.S.C. § 1988 and other applicable laws regarding such awards;

5) That the Court award Plaintiff such other and further relief as it deems just and necessary; and

6) That Plaintiff be granted a trial by jury.

This 10th Day of May, 2021

**ESHMAN BEGNAUD, LLC**

/s/ Mark Begnaud
Mark Begnaud
Georgia Bar No. 217641
mbegnaud@eshmanbegnaud.com
Michael J. Eshman
Georgia Bar No. 365497
meshman@eshmanbegnaud.com

315 W. Ponce De Leon Ave
Suite 775
Decatur, GA 30030
404-491-0170

**Engleman, Lily Eugenia**



## STATE OF GEORGIA
## ARREST WARRANT

| | |
|---|---|
| State of Georgia | Warrant # **19-765A** |
| VS. | Dept Case # **II-2019-3881** |
| Defendant **Lily Eugenia Engleman** | Offense **Felony, Giving weapons, intoxicants, drugs, or other items to inmates without consent of warden** |
| Address | |
| City/St/Zip | |
| SSN      DOB | O.C.G.A **42-5-18(a) Count(s) 1** |
| DL #    Sex    Race | Prosecutor **Nathan Adkerson** |
| Hair    Height | Department **Prison System** |
| Eyes    Weight | Address **300 Patrol Rd.** |
| | City/St **Forsyth, GA** |

### AFFIDAVIT

Personally came Nathan Adkerson, who on oath says that, to the best of his/her knowledge and belief Lily Eugenia Engleman did, commit the offense of, 42-5-18(a) Felony, Giving weapons, intoxicants, drugs, or other items to inmates without consent of warden on September 06, 2019 at 03:42 PM to September 06, 2019 at 03:49 PM, in Butts County. The place of occurrence of said offense being 2978 Hwy 36 W Jackson GA 30233; and against State of Georgia.

Said offense being described as:  42-5-18(a)  Felony, Giving weapons, intoxicants, drugs, or other items to inmates without consent of warden

For the said Lily Eugenia Engleman did violate O.C.G.A. 42-5-18(a) when he/she unlawfully to wit said accused did on the date of September 06, 2019 at between 3:42 PM and 3:39 PM hours  she was observed passing Georgia Department of Corrections Inmate Ricky Dubose two small unknown items that Inmate Ricky Dubose was observed picking the items up from the floor and then hiding said items in his socks as to avoid detection by staff. Said accused did pass these items to inmate Ricky DuBose with out the permission or consent of the Warden at the Georgia Diagnostic & Classification Prison Special Management Unit, A Correctional facility located in Butts County Georgia

Sworn to and subscribed before me
this 04th day of November, 2019.

Affiant _____ Nathan Adkelson

_____ Magistrate    Attested By _____ Nathan Adkelson

### STATE WARRANT FOR ARREST

**Georgia, Butts County**

TO ANY SHERIFF, DEPUTY SHERIFF, CONSTABLE, MARSHALL, OR LAW ENFORCEMENT OFFICER OF SAID STATE WHO IS AUTHORIZED BY LAW TO EXECUTE WARRANTS, GREETINGS:

For sufficient cause made known to me in the above affidavit, incorporated by reference herein, and from other sworn testimony by the Prosecutor therein, with said affidavit and testimony establishing Probable Cause for arrest of the accused: YOU ARE HEREBY COMMANDED to arrest the Defendant named in the foregoing affidavit who is charged by the Prosecutor therein with offense(s) against the laws of this state as named in said Affidavit, and bring him/her before me or some other Judicial Officer in this state to be dealt with as the law directs. HEREIN FAIL NOT.

Given under my hand and seal
this 04th day of November, 2019.

_____
Judge, Magistrate Court of Butts County

_____
Serve Date

_____
Served By