# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Lily ENGLEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>Nathan ADKERSON, Maryjane MOSS, Jose MORALES, and John and Jane DOE,<br><br>    Defendants. | Civil Action File No.<br>1:21-cv-01992-MLB |

## DEFENDANT NATHAN ADKERSON'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Nathan Adkerson, named as defendant in the above-styled case, and pursuant to Fed. R. Civ. P. 56 files this his reply brief in support of his motion for summary judgment and shows the Court the following:

### ARGUMENT AND CITATION OF AUTHORITY

I.  **Plaintiff has failed to provide any evidence to support her malicious prosecution claim, which is supported by speculation and conjecture.**

Plaintiff's response relies heavily on the Eleventh Circuit ruling in Williams v. Aguirre, 965 F.3d 1147 (11th Cir. 2020) and its progeny, which does lay out the framework for addressing a malicious prosecution claim, although the case is factually distinguishable from the present matter, which will be specifically

addressed herein. To establish a malicious prosecution claim[1], the correct standard is that the plaintiff must meet the burden of demonstrating (1) that legal process justifying her seizure was constitutionally infirm and (2) that her seizure would not otherwise be justified without legal process. Id. at 1165.

> **A. Plaintiff fails to meet her burden to demonstrate that legal process justifying her seizure was constitutionally infirm.**

In analyzing the facts under this framework, a law enforcement officer who applies for an arrest warrant can be liable for malicious prosecution (1) if he should have known that his application "failed to establish probable cause," **or** (2) if he made statements or omissions in his application that were material and "perjurious or recklessly false." Kelly v. Curtis, 21 F.3d 1544, 1553 (11th Cir. 1994)

> > **1. Plaintiff fails to meet her burden on summary judgment to establish false statement(s) by Adkerson because there is no dispute that he believed or appropriately accepted as true the statements in his affidavit for the search warrant**.

Plaintiff focuses the argument within her response brief on the allegation that Adkerson made false statements in order to secure her arrest warrant. In Franks v. Delaware, 438 U.S. 154, 155 (1978), the Supreme Court explained that a warrant is

---

[1] Where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest. See Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996)). While Plaintiff makes a claim for false arrest in her Complaint, based on issuance of legal process in this case and lack of responsive briefing on the false arrest claim, it is subject to dismissal.

[2]

constitutionally flawed if it contains a "false statement [made] knowingly and intentionally, or with reckless disregard for the truth." The Court made clear that when supporting a warrant, the statements need not actually be true; instead, a showing "that the information put forth is believed or appropriately accepted by the affiant as true" will suffice. Id. at 164-5.

In Williams, the Eleventh Circuit made clear the burden a plaintiff must meet to create a genuine issue of material fact regarding whether an arrest warrant is based upon false statement or perjurious testimony:

> Plaintiff first bears the burden of creating a genuine dispute about whether the officers' accusation against him was intentionally false and not, for example, a mistaken belief on the part of the officers. "[G]eneral attacks upon [a] defendant's credibility" are not enough to meet this burden. Nor are conclusory allegations and speculation. Instead, Williams must "identify affirmative evidence from which a jury could find that" the officers lied when they stated that he pointed a gun at them.

Williams, 965 F.3d at 1165-6 (citations omitted)

Notably, in Williams the video of the incident was clearly and unequivocally inconsistent with the sworn statements of the officers. In particular, the bodycam video showed Williams on his hands and knees and not holding a gun prior to Aguirre jumping back and shooting Williams twice. Id. at 1166-7. In statements that led to probable cause warrants, Aguirre testified that Williams had pointed a gun at him before he fired his weapon. The video as described by the Court had no

obstructions to viewing whether or not Williams was holding a gun; it is clear and unequivocal.[2] Id. at 1153-55.

In the present case, the video <u>cannot</u> clearly and unequivocally show facts contrary to Adkerson's affidavit and sincerely held beliefs because a table between Dubose and Engleman blocks the view of the portions of the interaction that occurred under the table. Plaintiff cannot demonstrate through the video that no contraband was passed; it is simply her interpretation of the video. Therefore, she cannot meet her burden to demonstrate that Adkerson made false statements that were not sincerely held beliefs about what occurred in the transaction. In fact, Adkerson's belief that contraband was passed between Dubose and Engleman is supported by the video—a view that was similarly held by multiple codefendants. To this day no one can definitively state what actually happened as Engleman leaned under the table

---

[2] Plaintiff also cites <u>Scott v. Harris</u>, 550 U.S. 372 (2007) in stating that Adkerson could not have held a sincere belief that contraband was being passed because the video clearly and unequivocally shows otherwise. In <u>Scott</u>, movant described the video of a collision indicating the driver was in control of his vehicle, proceeding cautiously and stopping accordingly, with no threat to pedestrians. The video in that case showed a high-speed chase, many run stop lights and a significant danger to pedestrians. Id. at 379-80. Unlike <u>Scott</u>, the video in the present case includes a view blocked by a table and is not unequivocal.

and Dubose took off his socks, slid his feet under the table, slid his feet back, and rolled up his socks.[3]

The statement at issue in Adkerson's affidavit supporting the arrest warrant is: "she [Engleman] was observed passing Georgia Department of Corrections inmate Ricky Dubose two small unknown items that Inmate Ricky Dubose was observed picking the items up from the floor and then hiding said items in his socks as to avoid detection by staff." Doc. 1, ¶ 38.The statement notes that Adkerson observed the act of passing, not the objects themselves, which he described as "unknown."

However, there is no need to guess at Adkerson's sincerely held belief, as he specified in detail how he reached this conclusion his deposition testimony, stating:

> you can't see anything drop, but, …there's movement on one arm. Dubose proceeds to take his shoe and sock off, reaches his leg over, pulls something back. Using his body as concealment and cover for the camera, he appears to pick something up, put his sock on. And when he rolls the sock back up… it appeared he concealed something in his sock. He repeated the same routine with his left leg…it was my overall interpretation that with the note, with the video, taking both socks off, putting them back on in the manner he did, that he was concealing something in both socks.

---

[3] Although charges were ultimately dropped, D.A. Adams testified that he believes to this day that contraband was passed during the subject Adams Dep. 68:17-23.

[5]

Adkerson, 121:23-122:12. In light of his training and experience as a veteran investigator, combined with the other circumstantial evidence he obtained[4], it was reasonable for Adkerson, to honestly believe and appropriately accept as true that contraband was being passed based on the video.

As the <u>Williams</u> court noted—the fact does not need to ultimately be determined to be true—at worst, if it was a mistaken belief by Adkerson—it still does not rise to the level of false statement. The only evidence plaintiff offers to dispute Adkerson's sworn testimony is the video—which does not and cannot show specifically what happened beneath the table between Dubose and Engleman. Therefore, Plaintiff cannot meet her burden to demonstrate that Adkerson made a false statement that undermined the validity of the arrest warrant and rendered the legal process leading to her seizure infirm.

### 2. **Plaintiff's malicious prosecution fails because there was probable cause for arrest warrant based on the facts presented to the magistrate.**

In <u>Williams,</u> the Eleventh Circuit clarified the distinction in probable cause determinations between false arrest and malicious prosecution cases, noting:

---

[4] The kite describing a female "L" as a source of contraband; the history of contraband being found on Dubose; statements by Dubose himself and Roundtree that contraband was coming from the defense team; the fact that Dubose was permitted no other visitors.

"warrantless arrests concern whether the facts known to the arresting officer establish probable cause, while seizures pursuant to legal process concern whether the judicial officer who approved the seizure had sufficient information to find probable cause**.** 965 F.3d at 1163. In making such an evaluation, the Supreme Court has instructed courts to look to whether "the judicial officer issuing such a warrant [was] supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." Whitely v. Warden, 401 U.S. 560, 564 (1971).

Adkerson testified that per standard protocol for obtaining an arrest warrant in Butts County, he presented the case via a Facetime call with the magistrate judge on call. Adkerson, 171, 11-16. Plaintiff's counsel makes the allegation that this call was conjured up after suit was filed. There is no basis for such an allegation. In fact, Adkerson provided counsel with all the information needed to verify not only that the Facetime call occurred, but also what information was provided to the judge, if he had chosen to do so.

Engleman specifically identified assistant magistrate, Judge Brad Christianson as the judge he had the Facetime call with, yet counsel has not deposed the judge or submitted an affidavit contradicting Adkerson's testimony. Additionally, Adkerson provided plaintiff's counsel with the state cell phone number he used, the service provider, the time of day he believed the call occurred, and the

phone number he used to contact the Judge at the Butts County Magistrate's office. Adkerson, 182-5; 189:1-5. Plaintiff failed to obtain and provide phone records to dispute that this conference took place as described by Adkerson. Instead, counsel manufactured a claim that the conference was made up "post-hoc" without a scintilla of evidence; however, in light of the availability of evidence confirming the meeting, this claim is disingenuous.

In terms of the information provided to Judge Christianson during this 5-10 minute Facetime call, Adkerson detailed the conversation with as much specificity as he could recall, stating he told the judge "[w]hen I watched it…it appeared that he pulled at least two items over with his feet, and you know, put right sock on, rolled sock up, appeared to conceal something in his socks. Again, telling the judge, can I tell what specifically? No." Adkerson dep.,173:8-13. He testified that he informed the judge that:

> from knowledge, training, and experience in working cases there [Jackson SMU], it was my interpretation that something was placed on the floor, he pulled it over with his bare feet, taking his shoes and socks off to be able to grip it with his toes, pull it over to him, and then conceal it in two socks.

Supra, 180:22-181:3.

Adkerson also told the judge about the notes found by Morales indicating the involvement of a female "L" and informed him of the items found in the holding

cell.[5] Supra, 178:10-18. Plaintiff attempts to second guess the evaluation by an experienced investigator to make the claim that it would have been reasonable to consider Vivica Harris as the person identified as "L", or a female gang member name Loyd (although no visits permitted or contact with female inmates), or perhaps "lieutenants" at the prison. This is nothing more than random speculation and conjecture by counsel rather than solid evidence running counter to probable cause in this circumstantial case that included repeated claims that the defense team (the only "outside" individuals Dubose was permitted contact with) were responsible for bringing in contraband. The note found by Warden Morales was identified by him by Dubose's prison nickname and by handwriting and was further circumstantial evidence supporting the probable cause that Lily Engleman was suspicious of passing contraband to Dubose.[6] Supra., 75:1-6.

As to the contraband in the holding cell—plaintiff claims Adkerson withheld information from the judge on the timing of the discovery and use of the cell—but this is a misrepresentation of the testimony. Adkerson attempted to recall and testify

---

[5] A blue piece of balloon; a piece of a broken Newport cigarette, and a paperclip.
[6] Counsel disputes that the kite indicated he wasn't searched after the visit, claiming the "MF" that Dubose noted didn't search him is not specifically identified, nor is there a date or time noted. The grammatical analysis and conjecture used in this literary analysis provides no evidentiary basis to undermine this piece of circumstantial evidence.

about this short conversation from "four years and 300 cases ago" and outlined what he recalled of the circumstantial evidence he provided to the judge. The issue of whether Adkerson discussed the timing of when the contraband was found was not addressed by counsel during the deposition, so there is no testimony supporting the claim that Adkerson did not tell the judge, once again this is mere conjecture and speculation. There is no testimony to support this position because counsel never asked the question.

Adkerson further detailed that he informed the judge that in interviews with Roundtree and Dubose there was information the defense team was bringing contraband to him, but they did not provide a specific team member. Adkerson, 174:13-16; 176:16-18. However, he noted these interviews "*played a small part in the overall decision to obtain the warrants….at the very least there appeared to be some impropriety with the [defense] team.*" Supra.,174: 21-25.

In sum, Plaintiff puts forth nothing more than mere conjecture and speculation rather than clear identifiable evidence and testimony to dispute that Adkerson provided valid, circumstantial evidence that supported the arrest warrant for the contraband charge when he did, in fact, present the case to the magistrate.

   **B.   Under the second prong of Williams, the arrest would have been valid even without legal process based on probable cause in the circumstantial case.**

The second prong of Williams in evaluating a malicious prosecution claim is whether the seizure would be valid without legal process. Williams at 165. This necessarily leads to a discussion of whether there was probable cause for the arrest without an arrest warrant. Probable cause defeats a malicious prosecution claim— even if that claim is based on an allegation of false statement. "Probable cause" means "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed . . . an offense." Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010). Probable cause "is not a high bar" and conclusive evidence is not required to establish probable cause. Washington v. Howard, 25 F.4th 891, 899 (11th Cir. 2022).

Plaintiff erroneously claims Defendant did not address this issue in his brief; in fact, Defendant clearly outlines the law and facts in support of the argument that Adkerson had probable cause for the arrest, irregardless of the legal process evaluation addressed above, and relies on the circumstantial evidence referenced therein (and as noted in this brief) to demonstrate that probable cause existed for an arrest even without a warrant. Doc.50, p.12-14.

### C. Adkerson is entitled to qualified immunity because there was arguable proximate cause for Plaintiff's arrest.

So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law of which a reasonable person

should have known, the doctrine of qualified immunity protects him from suit. Harlow v. Fitzgerald, 457 U.S. 800, 818. As demonstrated above, Plaintiff has failed to meet her burden to provide any evidence of false statement by Adkerson that would defeat qualified immunity. Furthermore, the circumstantial case which independently demonstrated probable cause and was presented to the magistrate is more than sufficient to demonstrate a mere showing of *arguable* probable cause, which is the only showing required for a finding of qualified immunity. "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." Crosby v, Monroe Cnty., 394 F.3d1328, 1332-3 (11th Cir. 2004).

In the present case, the highly suspicious behavior on the video of the September 9 visit, in combination with the information in the kite; the contraband, the witness statements, the fact that Dubose was only permitted visits from his defense team, and that Lily Engleman was the only female defense team member with a name beginning with "L," certainly demonstrate arguable probable cause that she provided contraband to Dubose during this visit. As a result, Adkerson is entitled to qualified immunity as a matter of law.

## II. **Adkerson did not violate Plaintiff's Fourth Amendment rights by viewing recordings made by the prison of her visits with Dubose.**

> **A. Only the September 9 video was part of the probable cause determination leading to Engleman's arrest; therefore, there is no causal link to damages from the subsequent live viewing of defense team visits.**

Plaintiff alleges that there was a Fourth Amendment violation for unlawful seizure in the observation of videos captured by Jackson SMU/DOC of visits between Dubose and his legal team. However, none of the live surveillance of video that occurred after the investigation was initiated by OPS was included in the arrest warrant or presentation to the magistrate and did not lead to the probable cause determination that led to the arrest of Engleman. **Only** the original video that had been previously recorded by the prison and personally shown to Adkerson by Warden Morales upon his request to view it was included in the probable cause determination that led to Engleman's arrest. Therefore, no damages inure to Engleman as a result of the reviewing of the video. To the extent viewing of the video impacted the privacy interests/right to counsel of Dubose, he is the only one with standing to make a claim for damages, not Engleman[7].

> **B. Plaintiff cannot establish a reasonable expectation of privacy for visits recorded without sound, as Dubose was in custody, a camera was clearly visible in the visitation room, and only attorney-client communications are subject to privilege.**

---

[7] A "law firm and its attorneys have no standing to seek a remedy for themselves for breach of the attorney-client privilege because the privilege does not belong to them.". MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP, 2008 U.S. Dist. LEXIS 106444, at *2 (M.D. Fla. Oct. 20, 2008).

The attorney-client privilege is not absolute. Because it "serves to obscure the truth, . . . it should be construed as narrowly as is consistent with its purpose." United States v. Bell, 776 F.2d 965, 971 (11th Cir. 1985). The Eleventh Circuit has established that attorney-client privilege only protects a communication from government intrusion when it is: "(1) intended to remain confidential and (2) under the circumstances was *reasonably* expected and understood to be confidential." Id.

The status of the persons being recorded matters because, as the Supreme Court has said on various occasions, "the expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope.'" Maryland v. King, 133 S. Ct. 1958, 1978, (2013). Here[8], the facts that Dubose was an inmate custody and was a high escape risk in the highest security prison in Georgia demonstrates his expectation of privacy had to be counterbalanced with risks to safety and security at the prison. Furthermore, the fact that CERT guards were stationed just outside the clear glass window of the visitation room and there was a video camera in the room that was clearly visible, all demonstrate there was no reasonable expectation of privacy regarding visual observation of bodily movements and interactions during the visit. Finally, it is attorney-client

---

[8] The present case is akin to the line of cases involving telephone surveillance of inmates in custody." See, e.g., United States v. Noriega, 917 F.2d 1543 (1990).

communications that are subject to the privilege. Perrigo Co. v. Merial Ltd., 2017 U.S. Dist. Lexis 216126 (N.D.Ga. 2017) at *8. Plaintiff provides no authority holding that merely observing the physical interaction between attorney and client is subject to any privilege.

## CONCLUSION

Based on the foregoing, Defendant requests that this Court grant his Motion for Summary Judgment for malicious prosecution and unlawful seizure of video footage. Defendant also requests dismissal of Plaintiff's false arrest, Free Speech and Fourteenth Amendment due process claims, since Plaintiff submitted no responsive briefing on these issues.

This 3rd day of July, 2023.

**SATCHER & MCGOVERN LLC**

/s/ Annarita L. McGovern
ANNARITA L. MCGOVERN
Georgia Bar No. 098141
*Counsel for Defendant Nathan Adkerson*

125 Stonemist Court
Roswell, GA 30076
Direct: (678) 488-6681
amcgovern@satchermcgovernlaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point Times New Roman type face.

This the 3rd day of July, 2023

                                          **SATCHER & MCGOVERN LLC**
                                          */s/ Annarita L. McGovern*
                                          ANNARITA L. MCGOVERN
                                          Georgia Bar No. 098141

                                          ***Counsel for Defendant Nathan Adkerson***

125 Stonemist Court
Roswell, Georgia 30076
Direct: (770) 847-7280
amcgovern@satchermcgovernlaw.com

I hereby certify that I have this day served the foregoing **DEFENDANT NATHAN ADKERSON'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** with the clerk of court using the CM/ECF system which automatically sends notification of such filing to attorneys of record:

| | |
|---|---|
| Mark Begnaud<br>Michael J. Eshman<br>ESHMAN BEGNAUD, LLC<br>315 W. Ponce De Leon Ave., Suite 775<br>Decatur, GA 30030<br>mbegnaud@eshmanbegnaud.com<br>meshman@eshmanbegnaud.com<br>*Counsel for Plaintiff* | Paul Henefeld<br>Noah Green<br>HENEFELD & GREEN, P.C.<br>3017 Bolling Way N.E., Suite 129<br>Atlanta, GA 30305<br>phenefeld@henefeldgreen.com<br>ngreen@henefeldgreen.com<br>*Counsel for Defendant Maryjane Moss* |
| David C. Will<br>ROYAL WILL<br>4799 Sugarloaf Parkway, Building J<br>Lawrenceville, GA 30044<br>dwill@royallaw.net<br>*Counsel for Defendant Jose Morales* | Charles Jackson Cole<br>MCRAE BERTSCHI COLE LLC<br>1872 Independence Sq., Suite D<br>Dunwoody, GA 30338<br>cjc@mcraebertschi.com<br>*Counsel for Defendant Mike Riley* |
| Timothy J. Buckley, III<br>Eric James O'Brien<br>BUCKLEY CHRISTOPHER, P.C.<br>2970 Clairmont Road N.E., Suite 650<br>Atlanta, GA 30329<br>tbuckley@bchlawpc.com<br>eobrien@bchlawpc.com<br>*Counsel for Defendant Jonathan Adams* | Derrick L. Bingham<br>Julie Rachel Comer<br>STITES & HARBISON, PLLC<br>303 Peachtree Street, NE, Suite 2800<br>Atlanta, GA 30308<br>dbingham@stites.com<br>jcomer@stites.com<br>*Counsel for Defendant Tomeika Jordan* |

[17]

Charles E. Cox, Jr.
CHARLES E. COX, JR., LLC
Post Office Box 67
Macon, GA 31202-0067
charles@cecoxjr.com
*Counsel for Defendants*
*John Richey and William Clayton Nix*

This 3rd day of July, 2023.

**SATCHER & MCGOVERN LLC**

/s/ Annarita L. McGovern
ANNARITA L. MCGOVERN
Georgia Bar No. 098141
*Counsel for Defendant Nathan Adkerson*

125 Stonemist Court
Roswell, Georgia 30076
Direct: (770) 847-7280
amcgovern@satchermcgovernlaw.com