IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LILY ENGLEMAN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) CIVIL ACTION FILE |
| v. | ) NO.: 1:21-cv-01992-MLB |
| | ) |
| NATHAN ADKERSON, et al., | ) |
| | ) |
|    Defendants. | ) |

**DEFENDANT JONATHAN ADAMS' REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Jonathan Adams (hereinafter "District Attorney Adams"), a named defendant in the above-styled action and files this, Reply Brief in Support of his Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, and shows the Court the following:

**ARGUMENT AND CITATION TO AUTHORITY**

**I.**    **District Attorney Adams was not personally involved in the investigation and arrest of Plaintiff and is entitled to absolute immunity.**

As it relates to District Attorney Jonathan Adams ("District Attorney Adams"), his lack of personal involvement in the underlying matter can be boiled down to the following set of alleged facts. OPS Director Clay Nix ("Director Nix") reviewed a recording of a September 6, 2019, meeting between an employee of the

1

Capitol Defender's office and an inmate detained for murder. The recording showed suspicious behavior and appeared to show contraband being passed by the Capitol Defender's office employee to the inmate detained for murder. Because the Capitol Defender's office and the criminal death penalty prosecution could have been implicated, Director Nix contacted District Attorney Adams' office ("DA's office") to arrange a meeting. Director Nix was not seeking guidance on whether or not to actually obtain a warrant. Director Nix simply wanted to determine whether the DA's office would support criminal charges based on the video alone prior to starting an investigation and potentially risking interference concerns as to the Capitol Defender's office and/or the criminal death penalty prosecution.

After reviewing the recording, the only opinion that District Attorney Adams gave to Director Nix and Special Agent Adkerson was that the video supported probable cause.[1]  That opinion was not binding, directive, or instructive on any course of action. In other words, OPS could independently conduct an investigation and District Attorney Adams did not provide any specific instructions or advice on how or even if to proceed with the investigation.

District Attorney Adams was not involved in the details of the investigation.

---

[1] The video also certainly supported arguable probable cause, which, as discussed below, is the standard in this civil matter.

District Attorney Adams did not make the decision to swear out the warrant. He also did not present the case to the grand jury. The DA's office was then in essence kept in the loop regarding the arrest but was not further involved. On October 15, 2019, the DA's office again offered the same opinion – that there was sufficient evidence to rise to probable cause – and any alleged flaw in Special Agent Adkerson's investigation does not create a fact question as to District Attorney Adams' lack of involvement in same. Had the DA's office opinion changed during that second meeting, OPS and Special Agent Adkerson were still free to independently continue to investigate Plaintiff and seek an arrest warrant or not.

Plaintiff's claims that this limited involvement – two meetings with OPS – somehow should deprive District Attorney Adams of his prosecutorial/qualified immunity and hold him responsible for Plaintiff's arrest – are not supported by case law and border on intellectual dishonesty. Doc. 69, p. 5. Not only does this level of involvement not reach the "personal participation" level for § 1983 purposes, but it also cannot be considered "advice" regarding prospective investigative conduct when considering District Attorney Adams' immunity. As such, claims against District Attorney Adams are subject to summary adjudication and he should no longer be permitted to proceed as part of this vexatious litigation.

A.   **District Attorney Adams is entitled to absolute immunity.**

The Eleventh Circuit has held that "[a] prosecutor is immune for malicious prosecution." Hart v. Hodges, 587, F.3d 1288, 1295 (11th Cir. 2009) (cit. omitted); Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999) ("A prosecutor is absolutely immune from suit for malicious prosecution."); Burns v. Reed, 500 U.S. 478, 486 (1991).  There is a limited exception where a prosecutor may be entitled to qualified immunity rather than absolute immunity when he gives "legal advice to police officers about the legality of their prospective investigative conduct." Burns, at 483.  A prosecutor functions as an investigator, for immunity purposes, when he searches for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested; similarly, a prosecutor also functions as an investigator when he participates in the search of a suspect's apartment. Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004).

Plaintiff relies on Burns to invoke the limited exception and apply it to this matter; however, such reliance is misplaced.  In Burns, two officers became concerned that hypnosis might be an unacceptable investigative technique and sought the advice of the Chief Deputy Prosecutor.  Burns, at 482.  The prosecutor told the officers to proceed with the hypnosis and based on that legal advice, proceeded with the hypnosis.  Id.  The officers then reported back statements made

while under hypnosis and the prosecutor stated that they "probably had probable cause" to arrest the suspect. Id.  Based on that assurance, the officers arrested the suspect.² Id.  The Court applied the limited "legal advice" exception to absolute immunity as the officers' actions were based on the advice of the prosecutor during the investigatory phase.  Id. at 496.

In the case sub judice, the DA's office was only and peripherally involved because of Plaintiff's status with the Capitol Defender's office and the inmate's pending criminal death penalty prosecution.  District Attorney Adams was not asked for and did not provide any advice or guidance on how to conduct the investigation.  He also did not search for clues or corroboration or recommend that Plaintiff be arrested.  Ultimately, the investigation and arrest of Plaintiff was at the direction of Special Agent Adkerson, as it was his case.  Special Agent Adkerson independently recommended prosecution – his recommendation was not based on any assurance

---

² Plaintiff's other citations assign misplaced support for applying the limited exception to this matter. Doc. 69, p. 5 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 274 (1993) (no absolute immunity to prosecutors that were endeavoring to determine whether the bootprint at the scene of the crime had been made by the suspect); Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009) (holding District Attorney entitled to absolute immunity); Holden v. Sticher, 427 Fed. Appx. 749, 751 (11th Cir. 2011) (no absolute immunity for Assistant District Attorney when he advised officers on how to fill out affidavits for arrest); Garcia v. Casey, 439 F. Supp. 3d 1283, 1288 (N.D. Ala. 2020) (no immunity for District Attorney who instructed the officer to arrest a suspect for obstructing a government investigation)).

from District Attorney Adams. As with every investigation, the DA's office contributed very little to the decision-making process related to Plaintiff's investigation. Accordingly, District Attorney Adams is entitled to absolute immunity as to Plaintiff's claims. See Captain Jack's Crab Shack, Inc. v. Cooke, 21-11112, at *10 (11th Cir. Sept. 22, 2022) (dismissing claims against prosecutors alleging that the prosecutors "directed" an illegal search, finding that the prosecutors were absolutely immune).

**B.  District Attorney Adams did not personally participate in the investigation into Plaintiff or her subsequent arrest.**

To the extent that District Attorney Adams' actions could conceivably or arguably fall into the limited exception to absolute immunity, they still do reach "personal participation" for § 1983 purposes. Without some degree of personal participation in the alleged deprivation of a plaintiff's rights by the defendant in a suit under § 1983, no liability can exist. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). Here, District Attorney Adams would have to be shown to have "directly participated in the unconstitutional conduct" to support Plaintiff's claims. Keith v. DeKalb Cty., 749 F.3d 1034, 1047(11th Cir. 2014); Rizzo v. Goode, 423 U.S. 362 (1976). Plaintiff's itemization of alleged conduct which might conceivably reach actionable are characterized by one element: a lack of personal participation by District Attorney Adams.

Plaintiff's claim that OPS investigators sought the meeting with District Attorney Adams to determine whether they "could they take out a warrant for Ms. Engleman's arrest." Doc. 69, p. 7. However, the evidence in the record is clear that the purpose of the meeting was to determine whether the DA's office would support criminal charges based on the video alone prior to starting an investigation into the Capitol Defender's office, which could have caused some "heat" within the organizations. Nix depo., pp. 48, ll. 17-20; 50, ll. 9-15; Jordan depo., pp. 31, ll. 1-4; 63, ll. 2-7. Director Nix – who initiated the meeting with the DA's office – has confirmed he was not seeking guidance on whether or not to actually obtain the warrant. Nix depo., p. 91, ll. 15-21.

While District Attorney Adams was *involved* in two meetings regarding the status of the investigation into Plaintiff, nothing suggests he directed or was personally involved in the alleged unconstitutional conduct. He had no role in securing the warrant; he did not direct subordinates to act unlawfully and/or know that subordinates would act unlawfully and fail to stop them from doing so; and, nothing shows that District Attorney Adams "had subjective knowledge of a risk of serious harm" to Plaintiff that he recklessly disregarded. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

No facts tie District Attorney Adams personally to the decisions to investigate

and/or arrest Plaintiff.[3]  It is true that District Attorney Adams' opinion was that the video was at least arguable probable cause to support charges against Plaintiff; however, such opinion apparently carried little weight as Special Agent Adkerson conducted his thorough investigation after receiving that opinion rather than immediately seek out an arrest warrant.  District Attorney Adams was simply kept in the loop because of Plaintiff's status with the Capitol Defender's office and because of the pending death penalty case.  As such, the claims against District Attorney Adams are without merit and should be dismissed.

## II.     District Attorney Adams is entitled to Eleventh Amendment immunity.

Plaintiff has now clarified and confirmed that "Ms. Engleman does not sue Adams in his official capacity, making this argument moot."  Doc. 69, p. 8.  Accordingly, District Attorney Adams is entitled to Eleventh Amendment immunity for all potential claims brought against him in his official capacity. See Presnell v. Paulding Cty., Ga., 454 Fed. Appx. 763, 766 (11th Cir. 2011).

## III.    District Attorney Adams is entitled to qualified immunity.

Plaintiff "argues only that Adams should have known that there was no

---

[3] Plaintiff cites limited deposition testimony in which lay witnesses were questioned regarding legal terms of art, District Attorney Adams submits these anecdotal episodes of wordplay do not rise to the level required to show actionable, personal participation in Plaintiff's investigation and arrest.  Doc. 69, p. 7.

probable cause or arguable probable cause for the crime for which she was charged." Doc. 69, p. 4. Such argument is merely a restatement of her "failure to intervene" claim and is only restated in an attempt to support her generic claim that "it is clearly established that a person cannot be arrested without a warrant if no probable cause exists." Doc. 69, p. 9. However, even if Special Agent Adkerson's investigation was allegedly flawed, it is clearly established that District Attorney Adams was not required to do *anything*, to the extent he had knowledge of same.

As an initial matter, District Attorney Adams denies that his alleged conduct violated any constitutional right, but, in any case, at least arguable probable cause was established as the video appeared to multiple officers/investigators to show Plaintiff passing an unknown object/contraband to the inmate. Morales depo., pp. 46, ll. 8-10; 62, ll. 11-14; Moss depo., p. 35, ll. 18-22; Jordan depo., p. 34, ll. 6-9; Adams depo., pp. 29, ll. 10-15; 40, ll. 5-9; Adkerson depo., p. 79, ll. 14-21; Nix depo., p. 40, ll. 12-16; Riley depo., p. 20, ll. 21-23; Cozzi v. City of Birmingham, 892 F.3d 1288, 1294 (11th Cir. 2018) ("Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest."). However, even assuming that a violation did occur, District Attorney Adams was not required to intervene.

For a right to be clearly established, it must be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Cooke, 21-11112, at *8 (cit. omitted). In assessing whether the law is clearly established, the Court looks to the law as it was interpreted at the time of the challenged conduct by the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court. Id. Here, there is "*no* clearly established law holding that a prosecutor violates the Constitution by failing to intervene in a police officer's investigation." Id., at *10 (emphasis in original). Rather, the law *is* clearly established that prosecutors were entitled to qualified immunity in similar cases, where the claim was that the prosecutor was "aware that others were tampering with evidence and t[ook] no action to stop them." Id. (citing Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1281 (11th Cir. 2002).

Therefore, a prosecutor is entitled to qualified immunity for the actions he allegedly failed to take/intervene during a police investigation. Id. Accordingly, District Attorney Adams is entitled to qualified immunity as to Plaintiff's individual capacity claims.

### IV. **Plaintiff is not entitled to attorney's fees or punitive damages as against District Attorney Adams.**

For the reasons discussed above, District Attorney Adams incorporates by reference as if restated verbatim herein, Sec. VI of his Brief in Support of his Motion

for Summary Judgment. Doc. 53-1, Sec. VI. As Plaintiff cannot prevail on her § 1983 action, she is not entitled to attorney's fees under 42 U.S.C. § 1988 or punitive damages.

## CONCLUSION

WHEREFORE, for the reasons set forth above, District Attorney Adams respectfully requests that this Court grant his Motion to for Summary Judgment as to all claims and that Plaintiff's Complaint be dismissed casting all costs upon Plaintiff.

This 7th day of July, 2023.

Respectfully submitted,

**BUCKLEY CHRISTOPHER & HENSEL, P.C.**[4]

/s/ Timothy J. Buckley III

_____
TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
ERIC J. O'BRIEN
Georgia State Bar No. 383745
Attorneys for District Attorney Adams

2970 Clairmont Road NE
Suite 650
Atlanta, Georgia 30329
(404) 633-9230 (telephone)
(404) 633-9640 (facsimile)
tbuckley@bchlawpc.com
eobrien@bchlawpc.com

---

[4] Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, I electronically filed DEFENDANT JONATHAN ADAMS' REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record:

Mark A. Begnaud
Michael J. Eshman
Eshman Begnaud, LLC
315 W. Ponce De Leon Ave
Suite 775
Decatur, Georgia 30030
*Attorney for Plaintiff*

Charles J. Cole
McRae Bertschi & Cole LLC
1872 Independence Square, Suite D
Dunwoody, Georgia 30338
*Attorney for Defendant Mike Riley*

Charles E. Cox, Jr.
Charles E Cox, Jr., LLC
P.O. Box 67
Macon, Georgia 31202
*Attorney for Defendant John Richey and Defendant Nix*

Derrick L. Bingham
Julie R. Comer
Stites & Harbison, PLLC
303 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30308
*Attorney for Defendant Tomekia Jordan*

Paul Henefeld
Noah Green
HENEFELD & GREEN, P.C.
3017 Bolling Way N.E., Suite 129
Atlanta, GA 30305
*Counsel for Defendant Maryjane Moss*

David C. Will
ROYAL WILL
4799 Sugarloaf Parkway, Building J
Lawrenceville, GA 30044
*Counsel for Defendant Jose Morales*

Annarita L. McGovern
Terry L. Long
Satcher & McGovern
288 South Main Street
Suite 100
Alpharetta, Georgia 30009
*Counsel for Defendant Adkerson*

|  |  |
|---|---|
|  | **BUCKLEY CHRISTOPHER & HENSEL, P.C.** |
|  | /s/ Timothy J. Buckley III |
|  | _____ |
|  | TIMOTHY J. BUCKLEY III |
|  | Georgia State Bar No. 092913 |
| 2970 Clairmont Road NE | ERIC J. O'BRIEN |
| Suite 650 | Georgia State Bar No. 383745 |
| Atlanta, Georgia 30329 | Attorneys for District Attorney Adams |
| (404) 633-9230 (telephone) |  |
| (404) 633-9640 (facsimile) |  |
| tbuckley@bchlawpc.com |  |
| eobrien@bchlawpc.com |  |

13